```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

CEMENT MASONS' UNION LOCAL NO.   :   CIVIL ACTION
NO. 592 PENSION FUND, et al.     :
                                 :
        v.                       :
                                 :
PERMAFLOOR, LLC, et al.          :   NO. 17-597

MEMORANDUM

Bartle, J.                                  January 10, 2018

Plaintiff Cement Masons' Union Local No. 592 of Philadelphia ("Cement Masons" or "Union"), along with several affiliated entities and multiemployer benefit trust funds, commenced this action against defendants PermaFloor, LLC and PermaFloor Keystone, Inc. (collectively "PermaFloor") for audit and contribution under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq.[1]  Plaintiffs allege that PermaFloor failed to make contributions to certain employee benefit funds as required under the terms of a collective bargaining agreement.  In response, PermaFloor filed an answer including a counterclaim against Cement Masons for fraudulent

---

1. Plaintiffs are Cement Masons' Union Local No. 592 Pension Fund; Cement Masons' Union Local No. 592 Welfare Fund; Cement Masons' Union Local No. 592 Joint Apprenticeship Training Fund; General Building Contractors' Association, Inc. Industry Advancement Program; Cement Masons' Union Local No. 592 Political Action Committee; Cement Masons' Union Local No. 592 of Philadelphia; and Bill Ousey, a fiduciary of the funds.

misrepresentation and fraudulent inducement with respect to the collective bargaining agreement.

Before the court is the motion of Cement Masons to dismiss the counterclaim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Also before the court is the motion of all plaintiffs to strike the counterclaim under Rule 12(f) of the Federal Rules of Civil Procedure.

I

When deciding a Rule 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and draw all inferences in the light most favorable to the plaintiff. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008). We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim must do more than raise a "mere possibility of misconduct." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679). Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. On a motion under Rule 12(b)(6), the court may consider

"allegations contained in the complaint, exhibits attached to the complaint, and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)).

Rule 12(f) of the Federal Rules of Civil Procedure provides that the court may strike from any pleading any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A court should not grant a motion to strike a defense unless the insufficiency of the defense is "clearly apparent." Cipollone v. Liggett Grp., Inc., 789 F.2d 181, 188 (3d Cir. 1986). Such motions, which are disfavored, are usually denied unless the material that the movant seeks to strike has "no possible relation to the controversy and may cause prejudice to one of the parties." McInerny v. Moyer Lumber & Hardware, Inc., 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002).

II

The following facts alleged in the counterclaim are treated as true for present purposes.[2] PermaFloor is a corporation engaged in the installation of seamless flooring. On or about July 30, 2007, the Union picketed a job site where

---

2. The court relies on the facts alleged in PermaFloor's answer and counterclaim as well as documents referenced therein.

PermaFloor was working.  That day, the owner and president of PermaFloor met with representatives of the Union.  During this meeting, the Union agreed to end the picketing on the condition that PermaFloor enter into a collective bargaining agreement with the Union.  According to PermaFloor, the Union represented that current PermaFloor employees or future employees trained by PermaFloor would not be required to be Union members.  However, PermaFloor would be required to hire Union members on a one-to-one-basis to its non-Union employees if working on a Union project within Philadelphia, Bucks, Chester, Delaware, and Montgomery Counties.  As a result, PermaFloor would not have to make payments to the employee benefit funds affiliated with the Union except for work performed by Union members hired by PermaFloor at Union locations within the greater Philadelphia region.

On the basis of these representations, PermaFloor's president signed a single-page document titled "Independent Contractors Agreement with Plasters and Cement Masons Union Local No. 592."  This page states:  "The Employer shall be, and is hereby, bound by all of the terms and conditions of employment contained in the attached Independent Contractor's agreement between the Union and the Employer."  The page contains a handwritten notation "Philadelphia + 5 Counties" but does not otherwise reference the representations allegedly made

-4-

by the Union.

PermaFloor was not presented with a copy of the full Independent Contractor's Agreement and never requested such document from the Union.  Thereafter, PermaFloor made contributions to the employee benefit funds in accordance with its understanding of the oral representations made by the Union.  Sometime in 2015, the Union requested a payroll compliance review of PermaFloor's financial records.  In December 2015, PermaFloor's president spoke with a representative of the Union who allegedly confirmed that "some companies, apparently including PermaFloor, did not have a full contract with the Union."[3]

On February 2, 2017, plaintiffs filed a complaint in this court seeking a full audit of PermaFloor's financial records and for contribution of money allegedly owed to the funds.  Plaintiffs attached to the complaint a lengthy document titled "Independent Contractor Agreement."  The document appears to be a form agreement between the Union and "Employer" but does not reference PermaFloor specifically.

Plaintiffs allege that PermaFloor assented to the full Independent Contractor Agreement, which obligates it to make contributions to the funds for all its covered employees and

---

3.  The parties dispute whether this conversation was recorded legally.  We need not resolve this issue for purposes of the present motion.

-5-

includes work performed outside the Philadelphia region.  After
a status conference with the court, PermaFloor cooperated with
an audit.  On August 8, 2017, an accountant retained by
plaintiffs issued an audit report stating that PermaFloor owes
$9,992,818.24 in delinquent contributions to the funds.  On
September 18, 2017, PermaFloor filed its answer with a two-count
counterclaim alleging fraudulent misrepresentation and fraud in
the inducement.  PermaFloor maintains that the Union's alleged
fraud only became apparent after it received a copy of the audit
report.

                                III

        Plaintiffs' complaint is brought under section 515 of
ERISA, which states:

>       Every employer who is obligated to make
>       contributions to a multiemployer plan under
>       the terms of the plan or under the terms of
>       a collectively bargained agreement shall, to
>       the extent not inconsistent with law, make
>       such contributions in accordance with the
>       terms and conditions of such plan or such
>       agreement.

29 U.S.C. § 1145.  Congress's intent in enacting section 515 was
to allow multiemployer welfare funds to rely upon the terms of
collective bargaining agreements and plans as written, thus
"permit[ting] trustees of plans to recover delinquent
contributions efficaciously, and without regard to issues which
might arise under labor-management relations law."  Cent. Pa.

Teamsters Pension Fund v. McCormick Dray Line, Inc., 85 F.3d 1098, 1103 (3d Cir. 1996) (quoting 126 Cong. Rec. 23,039 (1980) (remarks by Rep. Thompson)). Congress found that employer delinquency "detract[ed] from the ability of plans to formulate or meet funding standards and adversely affect[ed] the financial health of plans." Id. (quoting 126 Cong. Rec. 23,039). By enacting section 515, Congress sought to ensure that benefit plans are able to rely on the contribution promises of employers "because plans must pay out to beneficiaries whether or not employers live up to their obligations." Id. (quoting Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 314 (2d Cir. 1990)).

In accordance with this legislative history, courts have interpreted section 515 as severely limiting the defenses available to an employer who has executed an agreement to contribute to a benefit fund. Agathos v. Starlite Motel, 977 F.2d 1500, 1505 (3d Cir. 1992). Indeed, courts have recognized only three defenses to a section 515 action: (1) the pension contributions themselves are illegal; (2) the employees have voted to decertify the union as its bargaining representative, thereby prospectively voiding the agreement; or (3) the collective bargaining agreement is void ab initio due to fraud in the execution. Id.

In Count I of the counterclaim PermaFloor alleges fraudulent misrepresentation by the Union. In support of this claim, PermaFloor asserts that through its owner it executed a single-page document which it believed memorialized its assent to an agreement incorporating the oral representations made by the Union during negotiations. At oral argument counsel for PermaFloor asserted that this count is in essence a claim for fraud in the execution although it is not labelled as such.

Fraud in the execution, also known as fraud in factum, arises when a party executes an agreement believing that such agreement is an entirely different document. Agathos, 977 F.2d at 1505. To state a claim for fraud in execution, a party must allege "excusable ignorance of the contents of the writing signed." Id. (quoting Sw. Administrators, Inc. v. Rozay's Transfer, 791 F.2d 769, 774 (9th Cir. 1986)).

For example, in Connors v. Fawn Mining Corp., an employer executed a single signature page the day before a threatened mine closure. 30 F.3d 483, 486-87 (3d Cir. 1994). There was no document attached to the page at the time and the employer claimed both parties intended the page to symbolize their assent to the terms of a longer agreement memorializing certain representations made by the union during negotiations. Id. at 486-87, 492. Under these facts our Court of Appeals reversed a grant of summary judgment in favor of the funds and

-8-

permitted the employer to proceed with its defense of fraud in the execution.  Id. at 493.  In doing so, the Court stated:

> If an employer reviews a document reflecting the agreements reached in collective bargaining and the union surreptitiously substitutes a materially different contract document before both sides execute it, we think it clear that there has been a fraud in the execution of the contract and that the agreement reflected in the executed document is void ab initio and unenforceable by the union.  The employer has never manifested an assent to the terms of the alleged contract, and the written document purporting to evidence the agreement has been obtained by fraud.

Id.

The Court in Connors cited with approval a prior decision by the Court of Appeals for the Ninth Circuit, Operating Engineers Pension Trust v. Gilliam, 737 F.2d 1501, 1503 (9th Cir. 1984).  Connors, 30 F.3d at 492.  In Gilliam, the plaintiff signed a document after the union allegedly represented to him that the document was an application to become a union member as an owner-operator.  737 F.2d at 1503.  However, the document in fact was a collective bargaining agreement requiring the plaintiff to make contributions to a trust fund on behalf of all his employees.  Id.  The trust later brought suit for delinquent contributions due under the agreement.  Id.  The Court held that the employer "was not obligated to make such payments as he had reasonably relied on

the union's representation that he was signing a document of a wholly different nature." Rozay's Transfer, 791 F.2d at 774 (citing Gilliam, 737 F.2d at 1504-05). Therefore the plaintiff had asserted a valid defense of fraud in the execution. Gilliam, 737 F.2d at 1504-05.

The allegations raised by PermaFloor here are similar to those made by the employer in Connors and Gilliam. As discussed above, PermaFloor asserts that it executed a single signature page and was misled as to the nature of the actual agreement it entered. Under these circumstances we find that PermaFloor's allegations are sufficient to state a counterclaim for fraud in the execution. The motion to dismiss will be denied as to this claim so that the alleged fraud in the execution can be explored further in discovery.

In Count II of the counterclaim, PermaFloor raises a claim for fraud in the inducement. Fraud in the inducement arises when an employer executes a document understanding the nature of the agreement but is motivated by misrepresentations, such as whether the express provisions of the agreement will in fact be enforced. Connors, 30 F.3d at 490-93; Rozay's Transfer, 791 F.2d at 774-75. PermaFloor conceded at oral argument that such a defense is not permitted under section 515. See Agathos, 977 F.2d at 1505. Therefore the motion to dismiss will be granted as to this count.

In support of its motion to dismiss, the Union has also asserted that PermaFloor's counterclaim is preempted by section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). That statute preempts state law claims when such claims are "substantially dependent upon" or "inextricably intertwined with" consideration of the terms of a labor contract. Allis-Chalmers Corp. v. Lucek, 471 U.S. 202, 213, 220 (1985). Here, PermaFloor has alleged that the collective bargaining agreement at issue is void ab initio due to fraud in the execution. If true, the collective bargaining agreement would be a nullity. Under these circumstances section 301 is inapplicable.

The Union also asserts that PermaFloor is bound to arbitrate its counterclaim under the terms of the collective bargaining agreement. Again, if the collective bargaining agreement is void ab initio due to fraud in the execution, there can be no agreement to arbitrate. Because it is unclear whether the parties did in fact reach an agreement to arbitrate, PermaFloor is entitled to further discovery and cannot be compelled to arbitrate at this time. See Guidotti v. Legal Helpers Debt Resolution, LLC, 716 F.3d 764, 776 (3d Cir. 2013).

Accordingly, the motion to dismiss Count I of PermaFloor's counterclaim will be denied but the motion will be granted as to Count II.[4]

IV

We next consider the motion of all plaintiffs to strike the counterclaim under Rule 12(f). As stated above, we are dismissing the counterclaim to the extent it alleges fraud in the inducement. Thus the motion to strike is moot as to this count.

To the extent the counterclaim alleges fraud in the execution, we also will deny the motion to strike. A court should not grant a motion to strike a defense unless the insufficiency of the defense is "clearly apparent." Cipollone, 789 F.2d at 188. In its counterclaim PermaFloor has alleged sufficient facts to state a claim for fraud in the execution, which is a valid defense to an action brought under ERISA to recover delinquent contributions. See Agathos, 977 F.2d at 1505. Therefore there is no ground to strike this portion of the counterclaim from the action.

Accordingly the motion to strike will be denied.

---

4. In support of its motion to dismiss, the Union has also asserted that PermaFloor's counterclaim is barred by the statute of limitations. We find the record before us is insufficient to make a determination at this stage of the proceeding. However, the Union may again raise this issue on summary judgment after further discovery.